# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 4:15CR3075 |
| Plaintiff, | |
| vs. | FINDINGS, RECOMMENDATION, AND ORDER |
| AARON C. KREIFELS, | |
| Defendant. | |

The defendant has moved to suppress all evidence seized during the execution of a warrant on July 8, 2015. ([Filing No. 28](#)). For the reasons discussed below, the motion to suppress should be denied.

## BACKGROUND

The relevant facts from the hearing testimony, warrant application, and warrant are as follows:

On July 8, 2015, the Grand Island Emergency Center received a phone call regarding a possible overdose at 1413 Hagge Avenue in Grand Island, Nebraska. Grand Island Police Department ("GIPD") Officers Ryan Sullivan and Loren Crouch were called to the scene at 2:31 a.m. The officers knocked on the front door and did not receive a response from inside the residence. After attempting to contact Kreifels (the residence's owner) to gain consent to enter; checking for other ways to gain entry; and speaking with their supervisor; the officers forcibly entered the residence at 3:11 am.

Once inside, the officers navigated their way through the home until they found a nonresponsive woman in the living room. They called for emergency medical services ("EMS") at 3:15 am. The woman stirred after Sullivan performed a sternum rub, but she

was otherwise nonresponsive. Within the living room the officers noticed a strong smell of burnt marijuana. They observed a marijuana bong and container with a green, leafy substance believed to be marijuana in plain sight near the coffee table. Numerous pills of differing kinds were scattered across the floor, ottoman, and laptop computer located near the woman. Sullivan has been an officer with GIPD for 5 years; Crouch has been with GIPD for around a year. Both have training and experience with marijuana and drug-related materials.

The Grand Island Fire Department ("GIFD") arrived at 3:21 am. Paramedic, Tanner Greenough took over patient care. In an effort to safely administer care, Greenough asked the officers to search the residence for any pill bottles that help identify what the woman ingested and any other prescription medication she may be taking. Greenough testified that treatment varies depending on what was ingested, and many medications conflict. That is, knowing what the woman had ingested is vital to administering proper treatment, and the patient safety is compromised when the substance ingested is not identified. Although there were many pills found in the living area, since many pills have a similar appearance, EMS and the officers were unable to identify them by sight alone.

Sullivan and Crouch did not observe, and were not able to find, pill bottles in the living room. They subsequently searched other locations in the home where they believed medication could be found. They looked in the bathroom, bedroom, and a set of open shelves in the hallway. Within the bedroom, officers observed many items believed to be drug related in plain sight. Officers saw a clear plastic container holding a green, leafy substance under the bed. On top of the dresser the officers observed a large digital scale with a plastic bowl on top containing a green, leafy residue which smelled like marijuana; a marijuana pipe; a jar containing a small amount of marijuana; and a marijuana grinder. Sullivan opened the top dresser drawer and saw a few pills in a bag.

They observed some pills and rolling papers on a bookshelf. Near the bookshelf they found a clear plastic container holding pill bottles. The officers also saw bags containing a green, leafy residue. On the hallway shelves, the officers saw two clear containers containing a green, leafy residue.

After the officers walked through the residence, Sullivan handed the pill bottles found in the bedroom to Greenough. Greenough also collected the pills scattered in the living room for potential identification. Greenough was at the residence treating the woman for around 20 minutes and the ambulance departed at 3:43. Crouch followed the ambulance to the hospital and Sullivan remained at the house.

Due to the numerous items found indicating drug trafficking, the GIPD decided to request the guidance of the Central Nebraska Drug and Safe Street Task Force ("CNDSSTF"). Sergeant Atwell, a supervisor with the CNDSSTF, sent a task force investigator to assess the evidence. Investigator Kirkley, a drug investigator with the GIPD attached to the CNDSSTF, was called to the scene. Kirkley has completed more than 40 hours of narcotics investigator training. GIPD frequently contacts Kirkley in situations of drug-related activity, seeking his advice and input as to whether the GIPD should conduct a drug investigation.

Sullivan remained at the house and was joined by several other officers including Officers Riley and Renz who secured the property by sitting near the entrance. Kirkley arrived at 5:00 am and spoke with Sullivan. Sullivan reported what had happened and what he had observed. Sullivan then guided Kirkley through the residence, directing him to the items Sullivan and Crouch had seen and informing Kirkley of his conclusions regarding the items. Kirkley observed the items, took notes, and made his own conclusions. Kirkley was at the residence approximately 15 minutes.

3

Kirkley drafted the affidavit and warrant application. Within the application, Kirkley describes the GIPD's involvement at the location, including the reasoning for the initial search. Kirkley discussed his involvement as arriving on the scene, receiving a report, and being led through the residence. He does not claim that he found the drug-related items or that his observations were independent of Sullivan's; all information regarding the items found are discussed as being found by Crouch and Sullivan during the initial search and recognized by them based on their independent training and experience. (See Exh. 28). Judge Wetzel of the County Court of Hall County Nebraska concluded that probable cause was shown and a search warrant was issued around 8:30 a.m.

ANALYSIS

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable'" and is "'subject only to a few specifically established and well-delineated exceptions.'" Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). It is also well settled that an exception to the warrant requirement exists for searches conducted during exigent or emergency circumstances. Mincey v. Arizona, 437 U.S. 385 (1978); United States v. Valencia, 499 F.3d 813, 815 (8th Cir. 2007). In emergency situations, the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe a person within is in need of immediate aid. Mincey, 437 U.S. at 392–93. Nevertheless, the extent of the search is strictly limited by the emergency which serves to justify it; the emergency cannot be used to support a general exploratory search. Id. at 393.

Defendant argues that the search by Sullivan and Crouch through the bedroom, bathroom, and hallway shelves exceeded the scope allowed in light of the emergency

situation and was instead an exploratory search in violation of the Fourth Amendment. (See Filing No. 28 at CM/ECF p. 2).

The emergency in this case was an overdose. GIFD paramedic Greenough testified it was imperative to the treatment of the woman to identify the substances she ingested. Because the pills in the living room were not readily identifiable, Greenough asked Crouch and Sullivan to search for pill bottles or other indicators of what the woman ingested. Sullivan testified that he and Crouch searched in places known to be places where medication is commonly stored: The bathroom, including its countertops; the bedroom, including a bookshelf, the top of a dresser, and the top dresser drawer; under the bed for anything that may have been dropped; and the hallway shelves. The only item manipulated was the top dresser drawer: All other items were observed in plain sight. The search was not longer than 15-20 minutes. As a result of this search, the officers found several pill bottles and handed them to Greenough.

At all times, the officers were searching for pill bottles in order to provide the woman immediate aid and to increase her chance of survival. They did not explore the home, but limited their search to places commonly used for storing medications. The court finds that the search by the officers was justified by exigent circumstances and did not exceed the scope of the emergency.

While the court holds the initial entry and search by Sullivan and Crouch was justified, the defendant maintains the emergency did not justify the subsequent warrantless entry by Sullivan and Kirkley after the emergency subsided and the residence had been adequately secured. Therefore, he argues evidence gathered pursuant to the search warrant drafted by Kirkley should be suppressed.

The United States Supreme Court held in Mincey that there is no 'crime scene exception' to the warrant requirement which would allow reentry without a warrant to gather evidence in plain sight. Mincey, 437 U.S. at 391–92. Nevertheless, reentry by officers in order to seize, process, or document evidence seen in plain sight during the initial search is considered a continuation of the initial search. See United States v. Brand, 556 F.2d 1312 (5th Cir. 1977) (upholding other officer's subsequent entry where confined to the scope of the initial search); State v. Magnano, 528 A.2d 760 (Conn. 1987) (holding subsequent entry by new detectives was a mere continuation of the initial entry where the reentry was 35 minutes later and one of the initial officers who remained on-scene reenacted his movements for the detectives); Wofford v. State, 952 S.W.2d 646 (Ark. 1997) (holding subsequent entry by other officers is lawful, even though the emergency has passed, if the search is restricted in scope to securing evidence observed in plain view by the initial officers); but see People v. Koniecki, 481 N.E.2d 973 (Ill. App. Ct. 1985) (holding subsequent entry by officer for the purpose of seeking to confirm substance observed upon initial entry was drugs was not lawful); State v. Hockenhull, 525 A.2d 926 (R.I. 1987) (holding subsequent entry and seizure by officers other than the initial officers does not fit under the purview of the plain view exception).

EMS transported the woman to the hospital shortly after Sullivan and Crouch concluded their search. The GIPD immediately consulted the CNDSSTF for guidance. The resulting reentry and walk-through occurred without any break in GIPD presence and within a reasonable time after the initial search. Upon reentry, Sullivan and Kirkley did not expand the scope or nature of the initial search; instead, Sullivan reenacted the initial search for Kirkley. Kirkley did not touch, seize, manipulate, or otherwise interact with any item in the home: He merely viewed and noted the items pointed out by Sullivan.

Unlike in Koniecki, Kirkley was not consulted to determine whether the items were drug-related, but to determine if a drug investigation was desired based solely on

the evidence in plain sight during the exigent search: Sullivan concluded the items were drug-related based upon his own experience and training. See Koniecki, 481 N.E.2d at 401. Based on these facts, the court finds that Sullivan and Kirkley's subsequent reentry was an assessment of the evidence found in plain sight during the initial search, and the reentry and walk-through by Sullivan and Kirkley constituted a mere continuation of the original and lawful search.

Even if the reentry was illegal, the warrant is still valid under the independent source doctrine. The exclusionary rule to the Fourth Amendment is inapplicable when there is a weak connection between the constitutional violation and the evidence to be excluded. Nardone v. United States, 308 U.S. 338, 341 (1939). Under the independent source doctrine, evidence acquired through a source independent of any unlawful entry is only weakly connected, if at all, to the Fourth Amendment violation and is not subject to the exclusionary rule. United States v. Swope, 542 F.3d 609, 613 (8th Cir. 2008) (citing Wong Sun v. United States, 371 U.S. 471, 487 (1963)).

When evaluating whether the independent source doctrine is applicable to a search and seizure of evidence, the court must decide: (1) Was the agents' decision to seek the warrant prompted by evidence gathered through the illegal entry; and (2) Does the application affidavit support probable cause after the tainted information has been redacted. Swope, 542 F.3d at 613 (citing Murray v. United States, 487 U.S. at 542). "To support probable cause, the redacted application must describe circumstances showing that, based on practical experience and common sense, there is a fair probability that contraband or similar evidence will be found in the targeted place." Swope, 542 F.3d at 616 (citations omitted).

There was no additional evidence gathered through Kirkley's reentry and search. At most, Kirkley confirmed what Sullivan saw during Sullivan's search for the pill

7

bottles. As such, the evidence described within the warrant was not gathered during any illegal entry by Kirkley.

The defendant argues that the court must redact Kirkley's training and experience from the application because Judge Wetzel relied on this information in signing the warrant. ([Filing No. 52 at CM/ECF p. 1](#)). Defendant's argument implies that but for the subsequent entry and search, Kirkley either could not or would not have recited Sullivan's descriptions and observations and applied for the warrant.

It is common for an affiant officer to rely on and communicate information related to him by fellow officers within a warrant application. Indeed, a search warrant may be based on information from fellow officers and need not reflect personal observations of the affiant so long as the judge is informed of some of the underlying circumstances supporting the affiant's conclusion. [State v. Graves, 229 N.W.2d 538, 543 (Neb. 1975)](#); [McCray v. Illinois, 386 U.S. 300 (1967)](#). The communication of the fellow officer is presumed reliable by the judge. [Graves, 229 N.W.2d at 543](#); [United States v. Hill, 500 F.2d 315, 320 (5th Cir. 1974)](#); [United States v. Welebir, 498 F.2d 346 (4th Cir. 1974)](#); see also [United States v. Stratton, 453 F.2d 36 (8th Cir. 1972)](#) (holding an arrest warrant valid, reasoning "the knowledge of one officer is the knowledge of all and that in the operation of an investigative or policy agency the collective knowledge and the available objective facts are the criteria to be used in assessing probable cause.").

When Kirkley arrived, Sullivan reported his observations and conclusions to Kirkley. The majority of the warrant application emphasizes Sullivan's reported information. The GIPD commonly consults Kirkley, and as the investigator from the CNDSSTF, Kirkley drafted the warrant application in this case. The affidavit does not rely on Kirkley's personal observations, but upon the report of Sullivan -- a fellow officer who is also trained to recognize evidence of illegal drug activity. The fact that Kirkley

confirmed Sullivan's assessment before applying for a warrant does not place a blanket of taint over Sullivan's untainted observations, and thereby recast Sullivan's information as unlawfully obtained.

The defendant argues Kirkley's own observations and conclusions should be redacted from the warrant application. Within the application, Kirkley discusses all the drug-related evidence as being observed by Sullivan and Crouch and being "reported" to him. Even assuming Kirkley entered the home illegally, only a small amount of the application needs to be redacted; specifically, "Officer Sullivan led your affiant through the residence. All of the above drug items listed [were] observed by your affiant whom recognized these items from his training and experience controlled substance related." (See Exh. 28).

The redacted application describes the circumstances of GIPD's presence at the residence and the reason for the search, and the extent of Kirkley's involvement. Most importantly, the application discusses the many drug-related items observed in plain sight by Crouch and Sullivan during the exigent search. The application page containing Sullivan's report alone, and a common sense interpretation of that information, supports finding a fair probability that contraband would be found at the residence. The application, redacted to delete what Kirkley did and observed within the home, supports a finding of probable cause.

The court finds that neither the GIPD's decision to seek the warrant nor Judge Wetzel's decision to grant the warrant was prompted by information gathered during the Kirkley's entry into the residence. See Murray, 487 U.S. at 542–43. Even if the subsequent entry and search was illegal, the independent source doctrine applies.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 28) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before John M. Gerrard, United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on March 7, 2016 or as soon thereafter as the case may be called, for a duration of three (3) trial days. Jury selection will be held at the commencement of trial.

Dated this 9th day of February, 2016

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge